IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )  | CR 01-00599-TUC-CKJ (GEE) |
| Plaintiff,  )  | |
| )  | REPORT AND RECOMMENDATION |
| vs.  )  | |
| )  | |
| JOEL BOTELLO-QUINONES,  )  | |
| Defendant.  )  | |
| _____  )  | |

The District Court referred this case to the Magistrate-Judge for an evidentiary hearing on allegations the defendant violated conditions of his supervised release. The defendant consented in writing to proceed before the Magistrate-Judge and the evidentiary hearing was held on December 7th and 21st, 2006. Upon consideration of the evidence presented and arguments of respective counsel, the Magistrate-Judge recommends the District Court, after its de novo review, find the defendant has violated the conditions of his supervised release.

**FACTS:**

On August 27, 2002, having been convicted of Illegal Re-entry after Deportation Subsequent to an Aggravated Felony the defendant was sentenced to a 30 month term of incarceration, to be followed by a 36 month period of supervised release which commenced upon his release from prison on June 12, 2003. On March 1, 2006, the present petition was filed alleging the defendant violated a special condition which prohibited his re-entry into

the U.S. without legal authorization if deported.  Specifically, it is alleged Botello-Quinones was deported/removed on June 12, 2003, and was subsequently found in Phoenix, AZ, on January 29, 2006, having received no legal authorization to re-enter.

**EVIDENCE:**

*Warfield Moten*

Moten works for the Department of Veterans Affairs Police Department in Phoenix.  On January 29, 2006, at about 8:15 p.m. he received a radio call from Tadano, another VA police officer on foot patrol.   Tadano reported encountering two individuals on the VA premises and Moten drove to that location.  Upon his arrival he questioned each individual as to the reason for their presence on VA premises.  One of those questioned identified himself as "Bobby Cruz" and gave no reason for his presence.  During the hearing Moten identified the defendant as the person who gave his name initially as "Bobby Cruz".  Because the other individual stated that "Cruz" possessed drug paraphernalia, Moten frisked "Cruz" and found a "crude pipe that was made out of a light bulb along with a knife."  Moten then arrested and handcuffed "Cruz" and transported him to his station on the VA grounds.  The defendant denied having any identification documents.  After running the name "Bobby Cruz" through two law enforcement databases the results revealed a criminal record and several aliases, one of which was Joel Botello.

Moten testified that on the night of the arrest he took digital photos of Botello/Cruz and copies of those photos were admitted as Exhibits 1, 2, 3, and 4 (attached hereto).  Moten sated no fingerprints were taken because it is the policy of their department to take no prints unless the Phoenix prosecuting attorney authorizes booking of the defendant. The defendant was cited and released that evening.

At the request of government counsel the defendant  removed his shirt to reveal any tattoos he might have.  The physical appearance of, and tattoos on, the defendant matched those depicted in Exhibits 1, 2, 3, and 4.

1 *Michael Tadano*

2   Tadano is a police officer for the VA and was working patrol at the VA on the evening
3 of January 29, 2006, when he saw two individuals enter the premises about 8:15 p.m. He
4 reported this observation to another officer who proceeded to detain the individuals while he
5 (i.e., Tadano) observed from a distance of five feet. Tadano stated the area was "fairly well
6 lit by streetlights." Tadano identified the defendant as one of the individuals detained. The
7 defendant was transported to the station at the VA where Tadano questioned him several
8 times regarding his identity and reason for being present on the premises. That evening he
9 noticed the defendant had several tattoos and when shown Exhibit 2, 3, and 4 Tadano
10 testified those were the tattoos he saw on the person he interviewed on the evening of
11 January 29th.

12   On cross-examination Tadano stated the defendant had no identification papers but gave
13 his name as "Bobby Cruz" and furnished a birth date of 10/9/69. A NCIC check revealed a
14 "probation hit" and listed "Joel Botello-Quinones" as an a.k.a. for Cruz. The defendant was
15 issued a citation and advised to appear in federal court in Phoenix.

16

17 *Eric Burke*

18   Burke is police officer for the City of Phoenix. On July 23, 2006, he responded to a call
19 to an apartment in Phoenix regarding a domestic fight. At the scene he encountered an
20 individual he identified as the defendant who gave his name as "Bobby Cruz, Bobby Botello.
21 Ultimately he gave me Joel Botello, Joel Quinones." The defendant was arrested when a
22 records check revealed an outstanding U.S. Marshal's warrant.

23

24 *Christopher Outram*

25   Outram is a Phoenix police officer. He identified the defendant as a person he
26 encountered on July 23, 2006, when he responded to a "family fight call" at an apartment
27 complex in Phoenix. The defendant gave names of "Bobby Cruz" and "Joel Botello."
28 Outram arrested the defendant when a records check located a outstanding U.S. Marshal's

1  warrant. He identified Exhibit 9 (attached hereto) as a copy of the booking record he
2  prepared on the defendant which contains information from the defendant and a records
3  check; the record also contains copies of the fingerprints Outram took of the defendant
4  following his arrest on July 23rd. Outram testified that after completing the booking record
5  he took it to their Records and Identification Bureau. He requested a copy of that record
6  (Exhibit 9) from the Records and Identification Bureau on December 19, 2006, and the copy
7  is in substantially the same condition as when he initially submitted it. Outram also
8  identified Exhibit 10 (attached hereto) as a copy of photo taken when the defendant was
9  booked into the Maricopa County Jail following his July 23rd arrest. Outram was present
10 when the photo was taken and the copy was provided to him when he requested Exhibit 9
11 from the Records and Identification Bureau.

13 ***Gavin Weidman***

14 Weidman is a special agent for Immigration and Customs Enforcement (ICE). He
15 testified he obtained and reviewed the A-file for Joel Botello-Quinones from the Citizenship
16 and Immigration Service (CIS). Weidman testified the A-file lists a birth date of October 9,
17 1969. Exhibits 6 and 7 (attached hereto) are copies of certain documents from that A-file
18 which indicate Joel-Botello-Quinones was deported from Nogales, AZ, on August 23, 1994,
19 and he was removed again on June 12, 2003. Exhibit 7 contains a photograph of the
20 removed alien. Weidman testified he asked CIS to check its records to determine whether
21 Joel Botello-Quinones ever reapplied for readmission to the U.S. Exhibit 8 (attached hereto)
22 is a copy of that request and the response from CIS indicating there is no record the
23 individual obtained consent either prior to March 1, 2003, from the U.S. Attorney General
24 or anytime after February 28, 2003, from Department of Homeland Security. Weidman
25 testified he also checked the A-file and found no evidence that Botello-Quinones had filed
26 a petition for readmission.

27 On cross-examination Weidman stated that the A-file for Botello-Quinones indicates an
28 a.k.a.of "Bobby Cruz."

- 4 -

On December 21, 2006, the government recalled Weidman to testify. At that time Exhibit 11 (attached hereto) was admitted which is a Notice of Intent to Issue a Final Administrative Removal Order, i.e., Form I-851, dated June 12, 2003, found in the A-file for Joel Botello-Quinones. Weidman testified that while he worked in the administrative removal section of INS it was customary to have the deportable/removable alien place a fingerprint on the document just after signing the Form I-851. Weidman also identified Exhibits 12 and 13 (attached hereto) which are copies of documents from the A-file of Joel Botello-Quinones. These documents are related to the 1994 and 2003 deportations/removals, respectively, and bear the fingerprints of the alien.

Weidman admitted that the handwriting around the prints on Exhibits 11, 12, and 13 were not on the original documents as he found them in the A-file. At the request of the prosecutor he had provided Exhibits 11, 12, and 13 to Chad Avery of the Pima County Sheriff's Department.

### *Chad Avery*

Avery works for the Amended Fingerprint Identification System (AFIS) Unit of the Sheriff's Department. His job is to compare and analyze fingerprints for identification purposes. He compared the fingerprints provided to him in Exhibits 9, 11, 12 and 13 and concluded they were from the same individual; he also stated he had made the markings around the fingerprints on those documents on December 20, 2006.

### *Monica Esquivel*

Esquivel is a federal probation officer and supervises individuals who have been convicted of illegal reentry and subsequently deported. That "supervision" involves her monitoring for any new arrest or contact with law enforcement; she does not personally meet with the individuals. She filed the violation petition in this case after receiving a phone call from the VA Police Department on January 29, 2006, advising of the defendant's arrest. She testified she was able to determine that the arrestee and the defendant was the same person because:

1  Botello-Quinones used an alias, i.e. Bobby Cruz, on the 29th and that alias listed in his pre-
2  sentence report; the arrestee's birth date of 10/9/69 was also listed as Botello-Quinones' birth
3  date in his pre-sentence report; the arrestee's driver's license number was the same as that
4  listed in Botello-Quinones' pre-sentence report; the photos she received from the VA
5  matched the photo taken by the U.S. Marshals Service when Botello-Quinones was received
6  into their custody for the illegal reentry case that resulted in the conviction in CR-01-00599-
7  TUC-CKJ; and the photos from the VA showed tattoos matching those listed in Botello-
8  Quinones' pre-sentence report.

9  Esquivel also testified that Exhibit 14 confirms Botello-Quinones was released from the
10 Federal Bureau of Prisons on June 12, 2003, which marked the date his 36 month term of
11 supervised release began as imposed by the sentencing judge.

12 On cross-examination Esquivel admitted the defendant did not receive any written
13 statement regarding the conditions of his supervised release.

14

15 ***Other Exhibits***

16 Exhibit 5 (attached hereto) is a copy of the Judgement against Joel Botello-Quinones in
17 CR-01-00599-TUC-CKJ.

18 Exhibit 15 (attached hereto) is a transcript of the sentencing hearing in CR-01-0599-TUC-
19 CKJ on August 27, 2002.

20 Exhibit 16 (attached hereto) is a transcript of the change of plea hearing in CR-01-TUC-
21 0599-CKJ (GEE) dated June 11, 2002.

22

23 **DISCUSSION:**

24 Defense counsel argued the government failed to meet its burden as to three important
25 issues: (1) that the defendant was the person encountered at the VA Hospital on January 29,
26 2006; (2) that the defendant was validly deported on June 12, 2003, following his release
27 from the Bureau of Prisons; and (3) that the defendant was properly advised of the special
28 condition prohibiting his illegal reentry during his supervised release term.

- 6 -

It should be noted that the government conceded that the arrest of Botello-Quinones by the Phoenix Police Department on July 23, 2006, was not a violation of his supervised release because his 36 month supervised release term expired on June 11, 2006. Furthermore, that arrest is not listed in the violation petition filed on March 1, 2006. The question then arises as to why the government expended time and effort in presenting the testimony of the two policemen involved in that arrest, and in having the fingerprints from that arrest compared with prints from the A-file of Joel Botello-Quinones. The fact that the fingerprints match is only relevant if it is established that the individual arrested on July 23, 2006, is the same person encountered by the VA officers on January 29, 2006; therefore proving that the Joel Botello-Quinones person encountered on January 29th was indeed the same Joel Botello-Quinones deported on June 12, 2006. If fingerprints had been taken on January 29, 2006, or if the prints of the defendant before the court for the revocation hearing had been compared with those in the A-file, presumably the government's case would have been more straightforward. However, considering that the government's burden of proof in establishing a supervised release violation is "by a preponderance of the evidence", *see* 18 U.S.C. §3583(e)(3), and that hearsay evidence may be considered during a revocation hearing, *see United States v. Martin,* 984 F.2d 308, 310-11 (9th Cir. 1993), this court believes the revocation matter may be resolved without recourse to the fingerprint analysis.

This court is satisfied the government has established the defendant present during the revocation hearing is the same person encountered at the VA Hospital on January 29, 2006. The face and tattoos (including the "Botello", *see* Exhibit 2) of the defendant present during the evidentiary hearing match the photos taken that evening. Before providing the name Joel Botello-Quinones that evening, the defendant first gave the name of "Bobby Cruz" which is a known alias of his; in fact, it is listed on the Judgment (Exhibit 5). Also the birth date, i.e. 10/9/69, he provided on January 29th is one he has used frequently; it even appears to be part of a tattoo he bears (*see* Exhibit 4) and is also listed on the Judgment (*see* Exhibit 5). Furthermore, the probation officer testified that upon receiving notice of the January 29th incident she confirmed it was the defendant based upon the photos she received, and the fact

1 that the tattoos, drivers license number, birth date and alias matched those listed in the
2 defendant's pre-sentence report.

3 Frankly, the defendant's challenge of the prior deportation(s) is unclear. Defense counsel
4 at one point states he is challenging both the 1994 and the 2003 deportations. However, he
5 identifies no deficiencies in the 1994 proceeding. As to the 2003 proceeding he notes it "is
6 only a reinstatement or an administrative...so he didn't see an immigration judge." In
7 *Morales-Izquierdo v. Gonzales,* ___F.3d ___ WL 329132 (C.A.9), the Ninth recently decided
8 that the regulation authorizing immigration officers, rather than immigration judges, to
9 reinstate removal orders of aliens who illegally reentered the U.S. constituted a valid
10 interpretation of the Immigration and Nationality Act and did not violate the alien's due
11 process rights. Counsel also claims a due process violation because the defendant was not
12 adequately advised of his rights. However, no transcript of either deportation/removal was
13 presented and he does not specify which rights were allegedly not explained to the defendant.
14 Furthermore, no reference to case law, statute, or regulation was made to help identify the
15 alleged deficiency.

16 Lastly, defendant argues that, contrary to the current practice in this court, he never signed
17 a document acknowledging any of his supervised release conditions. However, that practice
18 was adopted as a direct consequence of the holding in *United States v. Ortuno-Higareda,* 421
19 F.3d 917 (9th Cir. 2005), which held a defendant must be given actual notice of his conditions
20 of supervised release before he may be sanctioned for violating them. However, that opinion
21 was vacated, after rehearing, in *United States v. Ortuno-Higareda,* 450 F.3d 406 (9th Cir.
22 2006). On December 29, 2006, the Ninth Circuit ordered en banc rehearing of the case, and
23 noted, "The three-judge panel opinion shall not be cited as precedent by or to this court or
24 any district court of the Ninth Circuit...." *United States v. Ortuno-Higareda,* __ F.3d____,
25 WL 3844210 (C.A.9).

26 While there are statutory provisions , 18 U.S.C. §§3583(f) and 3603(1), which state that
27 a probation officer must provide a defendant with a written copy of his supervised release
28 conditions, in *United States v. Ortega-Brito,* 311 F.3d 1136, (9th Cir. 2002), the Ninth Circuit

- 8 -

1  apparently excused this failure to comply with the statutory mandates on the basis that the
2  sentencing court had orally advised the defendant he was not to reenter this country illegally.
3  *Id* at 1139.      Page 8 of the sentencing transcript (*see* Exhibit 15) for Botello-Quinones
4  contains the following exchange:

5        The Court: Upon release from imprisonment, you will be placed on supervised
6        release for a period of three years.  While on supervised release you shall
7        comply...with the following additional condition: If deported, you shall not
8        reenter the United States without legal authorization.  Do you understand that,
9        sir?
10       Mr. Botello-Quinones: Yes, your Honor.

11 This court concludes the defendant received actual notice that he was not to reenter this
12 country illegally while on supervised release, and as the Ninth Circuit noted, "The actual
13 notice given to [the defendant] during the sentencing hearing satisfied the purpose of 18
14 U.S.C. §§ 3583(f) and 3603(1)." *Ortega-Brito* at 1139.  The government also presented a
15 transcript of the change of plea hearing from the defendant's underlying conviction.
16 Apparently this evidence is intended to show that the magistrate advised the defendant during
17 the change of plea that he would be precluded from illegal reentry during his supervised
18 release term.  This court, however, does not believe that advisement is relevant to the issue
19 at hand.

20

21 **RECOMMENDATION:**

22 In view of the foregoing, the magistrate recommends that the District Court, after its
23 independent review of the record, find the defendant violated the conditions of supervised
24 release as set forth in the violation petition. Any party may file and serve objections within
25 10 days after being served with a copy of this Report and Recommendation.  If objections
26 are not timely filed, the party's right to de novo review may be waived.  If objections are
27 filed, the parties should direct them to the District Court **by omitting the magistgrate's**
28 **initials from the caption.**

This Report and Recommendation is being faxed to all counsel on today's date. The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel.

DATED this 20th day of February, 2007.

*Glenda E. Edmonds*
Glenda E. Edmonds
United States Magistrate Judge